## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD DAVIS,

*Petitioner,*

v.

RANDY IRWIN, et al.,

*Respondents.*

CIVIL ACTION
NO. 19-3733

**Pappert, J.**                                                                    **April 22, 2024**

### MEMORANDUM

Ronald Davis was convicted in state court in 2014 of burglary, criminal conspiracy and receiving stolen property. He was sentenced to an aggregate term of four-and-a-half to nine years' imprisonment. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising two ineffective assistance of counsel claims. The Court referred the petition to Magistrate Judge Hey, who issued a Report recommending denial of both claims. Davis, now represented by counsel, objected to the R&R with respect to one of the claims. After an extensive review of the record, the Court overrules the objection and adopts the R&R.

I

A

The relevant facts were summarized by the Pennsylvania Superior Court during direct appeal and postconviction proceedings.

> On March 8, 2013, Marshauna Hinton entered her home on Locust Street in Norristown, Montgomery County, and found two men inside the residence. She promptly fled and called police. Hinton later identified co-defendant, Justin Johnson, from a photo line-up, and he was arrested that same day. Johnson admitted his involvement, and informed the police that he and Davis had

committed a string of burglaries in Norristown in early 2013, including the one at Hinton's home. Davis was initially charged on March 21, 2013, with the Hinton burglary. However, that complaint was withdrawn and a revised complaint was filed on April 15, 2013, charging Davis with numerous crimes, 68 counts in all, including robbery, burglary, [receiving stolen property], and conspiracy, for the 2013 Norristown burglaries.

(ECF No. 30, Ex. A, at 20).[1]

At a jury trial, held on September 3 and 4, 2014, regarding the burglary on Locust Street, Justin Johnson testified that he and [Davis] entered the home at 1215 Locust Street. Prior to entering the home, they knocked on the front door and yelled through the mail slot to determine if anyone was home. Satisfied the house was empty, [Davis] went behind the house, and gained entry into the home, and opened the front door from the inside and let Johnson into the home. Both men went to the second floor of the home to look for valuables. After a few minutes, at approximately 11:15 a.m., [Hinton] arrived home, and saw Johnson and another individual in a mask with a gun. Both men fled the home and ran to [Davis's] home on Cherry Street. It took less than five minutes to arrive at Cherry Street. They sorted the jewelry and discussed meeting at the Norristown Transportation Center to take the train to Lou's Pawn Shop in Upper Darby. They were in the home on Cherry Street for about five to ten minutes. Johnson was arrested while walking to his mother's house, a five minute walk from Cherry Street, to change his clothes. [Davis] traveled to Lou's Pawn Shop in Upper Darby, passing several other pawn shops in Norristown. At 2:51 p.m., records from Lou's Pawn Shop . . . show that [Davis] sold a ring taken from the Locust Street burglary. [Quotation omitted].

During closing arguments, [Davis's] counsel conceded that [Davis] had received stolen property, but argued that [Davis] had not been involved in the burglary itself. Moreover, [Davis's] counsel challenged the credibility of Johnson based on Johnson's prior convictions and argued that Johnson's testimony that [Davis] participated in the Locust Street burglary was inconsistent and unworthy of belief. *See* N.T. Trial, 9/4/14, at 85-86, 95-98.

The Commonwealth, during its closing argument, stated that Johnson was a known criminal and someone with whom [Davis] associated. *Id.* at 121-23. The prosecutor also stated that fifteen minutes elapsed between the burglary and Johnson's arrest. *Id.* at 136. In asserting that only fifteen minutes passed between the burglary and Johnson's arrest, the Commonwealth referred to Johnson's testimony that (1) it took fewer than five minutes to go from the burglary at 1215 Locust Street to [Davis's] home at 1007 Chestnut Street, (2) Johnson and [Davis] were at [Davis's] home for approximately five minutes, and (3) Johnson then headed to his mother's house to change clothes, which was took

---

[1]     Page numbers are those assigned by ECF unless otherwise specified.

[sic] another five minutes, but was unable to change his clothes because he was arrested. *Id.* at 135-36; *see also* N.T. Trial, 9/3/14, at 154-160.

At the conclusion of the trial, the jury convicted [Davis] of burglary, criminal conspiracy and receiving stolen property, but acquitted him of robbery. [Davis] was sentenced on January 9, 2015, to 4½ to 9 years of incarceration. On direct appeal, on December 30, 2015, this Court affirmed the judgment of sentence and permitted [Davis's] counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

(ECF No. 10-132, at 2-4) (alterations in original omitted).

## B

On January 21, 2016, Davis filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act. (*Id.* at 4; ECF Nos. 10-97, 10-107). He attached to his petition a police report which had not been introduced into evidence during his trial. (ECF No. 10-132 at 4.) The report indicated police were dispatched to the scene of the burglary at around 12:00 p.m. on March 8, 2013, and that Johnson was arrested at 1:13 p.m. (*Id.*) A PCRA hearing was held, where it was stipulated that Hinton called 911 after the burglary at 11:51 a.m. and that Johnson was arrested at 1:13 p.m., near 20 West Oak Street in Norristown, Pennsylvania. (PCRA Hr'g Tr., ECF No. 10-116, at 11:7-23.) It was further stipulated that it took approximately eleven minutes to walk from the site of the burglary to the site of Johnson's arrest. (*Id.* at 11:24-12:7.)

Davis alleged, in addition to other claims, that trial counsel, Ross Miller, was ineffective for failing to introduce evidence of this longer timeline, (ECF No. 10-132, at 4; ECF No. 30, Ex. B, at 41), which would have rebutted the fifteen-minute timeline relied on by the prosecutor in his closing argument. The PCRA court found Miller was not ineffective and dismissed Davis's petition without an opinion. (ECF No. 10-119.) Davis appealed and the PCRA court again affirmed the dismissal with an opinion

explaining its decision. (ECF No. 30, Ex. B, at 38-48.) Davis then appealed to the Superior Court, which also affirmed. (ECF No. 10-132, at 1.) The Pennsylvania Supreme Court subsequently denied Davis's petition for allowance of appeal. (ECF No. 10-133.)

C

On August 20, 2019, Davis filed this petition *pro se*, asserting two claims of ineffective assistance of counsel: (1) Miller failed to introduce evidence of the longer timeline, and (2) Miller failed to object to unduly prejudicial comments by the prosecutor during closing argument about Davis's "friendship" and "association" with Johnson. (ECF No. 2 ¶ 12, and at 24-36.) After the Commonwealth filed its response in opposition, (ECF No. 30), Davis filed a counseled reply memorandum. (ECF No. 36.)

On July 3, 2023, Judge Hey recommended denial and dismissal of both claims. (R&R, ECF No. 39.) The R&R found "significant merit" to Davis's first claim, correctly noting that offering the time of Johnson's arrest into evidence had "no apparent downside." (*Id.* at 13.) Doing so would have undermined Johnson's testimony that he was arrested earlier and "provided more time in which Johnson and Davis could have transacted an exchange of the ring." (*Id.* at 14.) It also would have weakened the prosecution's closing argument. The prosecution asserted it was "illogical and unreasonable" to think Davis could have gotten the ring from Johnson in fifteen minutes if he was not the second burglar. (Pet'r's Reply, App., at 777:24-779:23.) Judge Hey was nevertheless "unable to conclude that the Superior Court's analysis of this . . . claim was objectively unreasonable as required by [28 U.S.C. §] 2254(d)." (R&R at 13-14.) Specifically, the Superior Court reasonably applied "the strong presumption in

4

favor of counsel's strategic choices that is afforded" under *Strickland v. Washington*, 466 U.S. 668 (1984).  (*Id.* at 14.)  Additionally, the police report was not directly exculpatory.  (*Id.*)  Finally, Miller's theory that Davis bought the ring from Johnson was "plausible without reference to the time of arrest."  (*Id.* at 15.)  Judge Hey therefore concluded the Superior Court's decision was a reasonable determination of the facts and a reasonable application of the law.  (*Id.*)

Regarding the second claim, Judge Hey concluded it was "not unreasonable for the state courts to read the prosecutor's comments as fair response to defense counsel's closing argument about Johnson," since Miller had attacked Johnson's credibility in his own closing argument.  (*Id.* at 16-19.)  Moreover, the prosecutor's comments were "relevant to the charge of receiving stolen property."  (*Id.* at 19.)

On September 13, 2023, Davis, represented by counsel, objected to Judge Hey's rejection of his first claim.  (Objections to R&R, ECF No. 43.)  He relies on the arguments made in his counseled reply memorandum.  (*Id.* at 1.)  He also argues the Superior Court's analysis of Miller's performance was "based on an unreasonable determination of the facts."  (*Id.* at 6) (citing 28 U.S.C. § 2254(d)(2)).  Additionally, he argues Judge Hey was wrong to find the Superior Court's analysis of prejudice reasonable under *Strickland*.  (*Id.* at 7-9.)

II

When a party objects to a Magistrate Judge's R&R, the Court reviews *de novo* those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, 2016 U.S. Dist. LEXIS 111992, at *11 (E.D. Pa. Aug. 22, 2016).  "As for the

portion of the R&R to which no objection was made, the Court reviews the R&R for clear error." *Id.* With respect to Davis's unobjected-to claim, no clear error appears on the face of the record and the Court accepts Judge Hey's recommendation.

A

Claims resolved on the merits in state court are reviewed under the deferential standard established by the Antiterrorism and Effective Death Penalty Act of 1996, which precludes habeas relief unless the state court's adjudication of a claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The Court applies this standard to the state court's "last reasoned decision" on the petitioner's claim. *Bond v. Beard*, 539 F.3d 256, 290-91 (3d Cir. 2008). Here, that is the decision of the Pennsylvania Superior Court. *See Wilson v. Sellers*, 584 U.S. 122, 125-26, 131 (2018); *Brown v. Davenport*, 142 S. Ct. 1510, 1528-29 (2022); *Henderson v. Att'y Gen. Pa.*, 2024 WL 545723, 2024 U.S. App. LEXIS 3243, at *5 n.3 (3d Cir. Feb. 12, 2024) (reviewing the Superior Court's decision where the Pennsylvania Supreme Court denied allowance of an appeal without an opinion).

Clearly established law "refers to the holdings, as opposed to the dicta," of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Review under Section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is "contrary to" clearly established law if it "applies a rule that contradicts the governing law set forth in Supreme Court precedent" or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (cleaned up) (quoting *Williams*, 529 U.S. at 405-06).

A state court decision is an "unreasonable application" of clearly established law where "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 252 (3d Cir. 2020) (alteration in original) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (en banc)). "[M]ere disagreement with the state court's conclusions is not enough to warrant habeas relief." *Id.* (quoting *Matteo*, 171 F.3d at 890). An unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

To be unreasonable, a state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, "a petitioner must persuade a federal court that no fairminded jurist could reach the state court's conclusion" under Supreme Court precedent. *Davenport*, 142 S. Ct. at 1525 (cleaned up) (quotation omitted). Consequently, "even a

strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

A state court decision is based on an unreasonable determination of the facts when its factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)).  Review is deferential here too.  A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

B

Ineffective assistance of counsel claims are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on such a claim, a petitioner must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness," and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).  The Court may address these prongs in either order and need not address both if Davis "makes an insufficient showing on one." *Strickland*, 466 U.S. as 697.

Under *Strickland*'s first prong "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688).  Counsel

8

performs deficiently by making errors "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 462 (alteration in original) (quoting *Strickland*, 466 U.S. at 687). Review of counsel's performance is "highly deferential" because "it is all too easy for a court to find a certain act or omission unreasonable after the defense ultimately proves unsuccessful." *Id.* (internal quotation marks omitted) (quoting *United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005) and *Strickland*, 466 U.S. at 689).

*Strickland* also makes clear that "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006). Strategic choices that counsel made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. And strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. When it evaluates "a particular decision not to investigate," the Court applies "a heavy measure of deference to counsel's judgments." *Id.*

To satisfy *Strickland*'s second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This standard is lower than a

preponderance of the evidence, but this distinction only matters "in the rarest case." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 113, 123 (3d Cir. 2024) (quoting *Richter*, 562 U.S. at 112).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. Showing under Section 2254(d) that a state court unreasonably applied *Strickland* is accordingly "all the more difficult." *Id.* Both standards are deferential on their own, so when both apply, "review is 'doubly' so." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Unreasonableness under *Strickland* is not the same thing as unreasonableness under Section 2254(d). Under the latter standard, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Rather than asking whether the state court's determination under *Strickland* was incorrect, the Court therefore asks whether that determination was unreasonable, "a substantially higher threshold" to overcome. *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

III

Davis argues Judge Hey was wrong to conclude the Superior Court did not unreasonably reject his ineffective assistance of counsel claim. Specifically, he contends Judge Hey should not have reviewed the Superior Court's decision deferentially under Section 2254(d) because it was based on an unreasonable determination of the facts and an unreasonable application of clearly established law. (Objections to R&R at 3-6); (Pet'r's Reply 23-26.) Although Judge Hey found Davis's claim had merit, she correctly

10

concluded the Superior Court's analysis was not "objectively unreasonable as required by [S]ection 2254(d)." (R&R 14.)

Davis contends the Superior Court's factual determinations were unreasonable in two ways. First, he argues Miller's testimony at the PCRA hearing shows his decision not to present the timeline evidence cannot be considered strategic. (Objections to R&R at 4-6.) He also contends the Superior Court unreasonably concluded Miller's theory was plausible even without the timeline evidence. (*Id.* at 3-4.)

During the PCRA hearing, Miller testified that a longer timeline would have strengthened his theory that Johnson sold Davis the stolen ring before being arrested. (PCRA Hr'g Tr. 61:25-62:15.) He also "[could not] say that the [extra] time [was] not important." (*Id.* at 63:2-5.) Nevertheless, he did not believe he needed "to demonstrate a lot of time in order to potentially have there be some transfer of the stolen goods." (*Id.* at 62:15-18.) Such a transfer, he said, could have happened in only five or ten minutes. (*Id.* at 62:19:22.) And it could have happened in a quick handoff; "[i]t could have happened in, [h]ere's this ring, want to buy it[?] [Y]eah[]." (*Id.* at 62:23-25.) Ultimately, Miller concluded that the time frame "was not material to the defense as it developed over the course of the trial." (*Id.* at 63:4-7.)

Miller was familiar with the police report and reviewed it prior to trial. (*Id.* at 18:18-25.) He also reviewed, using Google or Bing Maps, the locations of the site of the burglary, Davis's home and the site of Johnson's arrest, in relation to one another. (*Id.* at 21:12-22:11.) "[B]ecause not much time was required for Johnson to sell the ring to Davis," Judge Hey concluded it was reasonable for the Superior Court to "apply the

strong presumption in favor of counsel's strategic choices that is afforded under *Strickland*." (R&R at 14.)[2]

A

Davis argues the Superior Court's decision "that trial counsel had a reasonable basis for failing to present the evidence was . . . based on an unreasonable determination of the facts." (Objections to R&R at 6.) He contends specifically that Miller's testimony shows his decision not to present the timeline evidence was an uninformed error, not a strategic decision. (*Id.* at 4-6.)

First, Davis points to Miller's apparent confusion regarding evidence presented at trial. Miller was asked at the PCRA hearing whether any timeline evidence was presented, other than Johnson's testimony. (PCRA Hr'g Tr. 26:16-28:3.) He said he thought one of the first officers to respond to the burglary "was asked about the timeline of the police response." (*Id.* at 20:7-22.) But when asked if he would be surprised to hear that the evidence at trial did not specifically show what time the police were called, Miller said no. (*Id.* at 20:23-21:11.) But his answers here reflect Miller's limited recollection of the trial, rather than his thought process at the time. *See* (*id.* at 28:9-15) ("I can't recall specifically the testimony of Officer Fay . . . I don't know that there was anything specific presented").

Davis next argues Miller did not make a strategic choice because he was unsure of when exactly Johnson was arrested. (Objections to R&R at 5-6); *see also* (PCRA Hr'g Tr. 28:20-23) ("it was never fleshed out at all what . . . 1:13 referred to in terms of the

---

[2] The R&R says it was reasonable for the "trial court" rather than the Superior Court, to find counsel's choice was reasonable. Because the immediately preceding sentence and subsequent analysis address the Superior Court's reasoning, the Court construes this sentence of the R&R to also discuss the Superior Court's decision.

actual arrest of Justin Johnson").  Specifically, Miller was unsure whether Johnson's 1:13 p.m. arrest time on the police report meant the police initially made contact with Johnson at that time, or whether they made contact with him earlier but did not formally arrest him until 1:13.  (PCRA Hr'g Tr. 28:25-29:5.)  Davis contends counsel would have known 1:13 referred to the time of initial contact if he had adequately reviewed the report.  (Objections to R&R at 6.)  Therefore, his decision not to use it at trial was not based on "substantial investigations," and not a strategic decision entitled to deference under *Strickland*.  (*Id.*)  The Superior Court's contrary conclusion, he argues, "was therefore based on an unreasonable determination of the facts" under Section 2254(d)(2).  (*Id.*)

This argument, however, is beside the point.  Again, strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  Miller's other explanation for failing to present the timeline evidence justifies his decision not to explore the timeline further.  He believed a shorter window of time was enough to support his theory that Davis purchased the ring from Johnson.  His testimony provided the Superior Court a reasonable basis to conclude his failure to present the timeline evidence was not a "mere oversight or neglect but was instead the result of a deliberate decision."  *See Wood*, 558 U.S. at 302. While an hour and twenty-two-minute window left more time for such a deal to transpire than a fifteen-minute window, the Superior Court was not unreasonable, based on the record before it, to conclude Miller made an adequately informed strategic decision.

Any uncertainty Miller had about whether the police made contact with Johnson before 1:13 does not change this result.  If the police both made contact with and arrested Johnson at 1:13, Miller would have had the longest window of time possible for Johnson to have sold Davis the ring.  If the time of contact preceded the time of arrest, this window would have been shorter.  Either way, Miller knew 1:13 was the latest possible time Johnson was arrested.  He already knew the strongest potential case the report offered when he chose not to investigate it further.  In short, Miller knew all he needed to when he elected to rely on a potentially shorter timeline.  The Superior Court's conclusion that he made a strategic decision is therefore not based on an unreasonable determination of the facts under Section 2254(d)(2).

## B

The Superior Court also concluded Miller's theory was plausible even without the timeline evidence (ECF No. 10-132, at 7), a conclusion that was not unreasonable under Section 2254(d)(2).  According to Davis, although the idea that Johnson could have sold Davis the ring in a fifteen-minute period is "*possible*, it is not *plausible* or believable."  (Objections to R&R at 4.)

Under Section 2254(d)(2)'s deferential standard, Judge Hey was correct to reject this argument.  Although the parties stipulated during the PCRA hearing that the walk from the site of the burglary to the site of Johnson's arrest took eleven minutes, Judge Hey found "sufficient time for Johnson to meet up with Davis to sell the ring."  (R&R at 15.)  Contrary to Davis's argument, the stipulation does not mean Johnson only had four minutes to sell Davis the ring, since the two could have "walked together during the exchange."  (*Id.*)  And as Miller himself testified during the PCRA hearing, an

14

exchange of the ring could have happened in five minutes or less.  *See* (PCRA Hr'g Tr. 62:15-25.)  Based on the record, the Superior Court was neither unreasonable in concluding counsel strategically chose not to present the timeline evidence, nor in concluding counsel's theory was "plausible without reference to the time of arrest."  *See* (R&R at 15.)[3]

## IV

Davis also argues the Superior Court's decision involved an unreasonable application of federal law in violation of Section 2254(d)(1) because Miller had no reasonable basis for failing to present the timeline evidence at trial.  While he stuck to a coherent strategy that Davis was only guilty of receiving stolen property, "he failed to elicit the crucial evidence necessary to make it believable to the jury: an accurate timeline."  (Pet'r's Reply at 24.)

The Superior Court concluded Miller's decision not to present the timeline evidence or to impeach Johnson with it was reasonable.  This conclusion is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Richter*, 562 U.S. at 103.  Miller did not believe he needed very much time to show Johnson sold Davis the ring and the Superior Court did not unreasonably apply *Strickland* by deferring to his professional judgment.  Moreover, Miller otherwise zealously and vigorously

---

[3]      The Superior Court's conclusion about the factual plausibility of Miller's theory is a separate question from whether this strategic choice was reasonable under *Strickland*.  Though these two questions heavily overlap, the latter is a legal rather than a factual question.  *See Berryman v. Morton*, 100 F.3d 1089, 1095 (3d Cir. 1996) (explaining that "a state court's finding that counsel had a trial strategy is a finding of fact to which the habeas court must afford the presumption of correctness if that factual finding is supported by the record," while "the question of whether counsel's strategy was reasonable goes directly to the performance prong of the *Strickland* test, thus requiring the application of legal principles").

litigated his case, cross-examining Johnson extensively and impeaching his credibility through *crimen-falsi* convictions.  *See* (Pet'r's Reply, App., at 545-85, 592-94.)

While a longer window of time would likely have made Miller's theory more believable, "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan*, 445 F.3d at 681-82.  "[T]he mere existence of alternative -- even preferable or more effective -- strategies does not satisfy the requirements of demonstrating ineffectiveness under [*Strickland*]." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002).  Particularly so here, under Section 2254(d)(1)'s "doubly" deferential review.  *See Richter*, 562 U.S. at 105 (quotation omitted).[4]

C

Because the Superior Court reasonably determined Miller's performance was not deficient, the Court does not need to separately analyze its application of *Strickland*'s prejudice prong.  *See Strickland*, 466 U.S. as 697.

---

[4]      Miller also said he did not think the timeline evidence "would have made a difference because of the testimony of Justin Johnson and the evidence regarding the pawn shop."  (PCRA Hr'g Tr. 64:19-23.)  He appears to have been referring to Johnson's testimony that he and Davis planned to take the ring to the pawn shop together.  (*Id.* at 63:8-64:11, 92:6:16.)  Davis argues this explanation was unreasonable since Johnson knowing where Davis planned to sell the ring is not inconsistent with the theory that Johnson sold the ring to Davis.  (Objections to R&R at 8) ("Even if Mr. Johnson did know about Mr. Davis's plan to sell the ring at Lou's Pawn Shop . . . he could have learned about the plan during the sale of the ring to Mr. Davis and not during the burglary itself").

But the Superior Court's application of *Strickland* was reasonable regardless since other portions of Miller's testimony independently support the Superior Court's conclusion.  Again, Miller did not think he needed the timeline evidence to pursue his theory, and the Superior Court's determination that this reflected a reasonable strategic choice was not an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts.  *See Parker v. Matthews*, 567 U.S. 37, 42 (2012) (per curiam) (where one of multiple grounds for the state court's decision is "sufficient to reject [petitioner's] claim . . . it is irrelevant that the court also invoked a ground of questionable validity").

IV

Judge Hey also denied Davis a certificate of appealability.  (R&R at 21-22.)

Davis objects.  (Objections at 9.)  A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2).  The petitioner must "demonstrate that reasonable jurists would

find the District Court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El*, 537 U.S. at 327 ("A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed

further").  Reasonable jurists would not debate this Court's ruling, and Davis has not

made a substantial showing of a denial of a constitutional right as required by Section

2253(c)(2).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.